# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | **JUDGE RICHARD L. SPEER** |
| Donna Gregory ) | Case No. 07-3018 |
| Debtor(s) ) | (Related Case: 06-32819) |
| Donna Gregory ) | |
| Plaintiff(s) ) | |
| v. ) | |
| U.S. Department of Education ) | |
| Defendant(s) ) | |

## DECISION AND ORDER

  This matter comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine Dischargeability of Debt. At the conclusion of the Trial, the Court took the matter under advisement. At issue at the Trial was whether the Debtor was entitled to receive a discharge of a student-loan obligation pursuant to the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). On this issue, the Court has now had the opportunity to review the applicable law, the evidence presented, as well as the arguments made by the Parties' respective legal counsel. Based upon this review, the Court, for the reasons herein stated, declines to grant the relief requested by the Debtor.

Donna Gregory v. U.S. Department of Education
Case No. 07-3018

## FACTS

On October 7, 2006, the Plaintiff/Debtor, Donna R. Gregory (hereinafter referred to as the "Debtor"), filed a voluntary petition in this Court for relief under Chapter 7 of the Bankruptcy Code. Thereafter, the Debtor brought this adversary proceeding against the United States Department of Education (hereinafter "DOE") seeking a discharge of her student-loan obligation pursuant to 11 U.S.C. § 523(a)(8). This loan was incurred in May of 1988, when the Debtor borrowed the sum of $4,000.00 to attend the Cleveland Institute of Technology. At the Trial held on this matter, the Parties stipulated that the Debtor now owes the DOE the sum $17,617.88 on this educational debt.

The Debtor is a married woman, 43 years of age. The Debtor and her husband have one minor child, age four. Presently, and for the past six years, the Debtor has been employed, on a full-time basis, as an assistant at a homeless shelter where she is paid at the rate of $10.51 per hour. During the years prior to obtaining her job at the homeless shelter, the Debtor had been employed in a higher paying position with the State of Ohio.

The Debtor's husband is employed as a welder. From their employment, the Debtor and her husband have a net monthly salary of $3,126.66, which constitutes their sole source of income. Against this income, the Debtor claimed $3,440.00 in necessary, monthly expenses, thus leaving their household budget with a shortfall of just over $300.00 per month. Notwithstanding, the Debtor acknowledged that her monthly budget does have some flexibility, and could yield approximately $50.00 per month for the payment of her student-loan obligation.

The Debtor incurred her student loan in May of 1988, when she borrowed the sum of $4,000.00 to pursue a course of study in 'word processing' at the Cleveland Institute of Technology. As of May of 1990, this school was listed, in records maintained by the DOE, as "officially closed."

Page 2

Donna Gregory v. U.S. Department of Education
Case No. 07-3018

(Ex. No. 4). The Debtor, however, claims that the school functionally closed during the course of her studies.

Since incurring her student loan to attend the Cleveland Institute of Technology, the Debtor has effectuated consolidation agreements with the DOE, whereby interest accruing on the loan was folded into the principal. The Debtor, however, has made only small, sporadic payments on the debt. As a result, the Debtor has been, since at least 1995, in default on her obligation with the DOE. Based upon her default, the DOE offered the Debtor the opportunity to participate in the Income Contingent Repayment Program, commonly abbreviated as "ICRP," which allows payments to be made by student-loan borrowers based on their ability to pay, rather than according to the contractual rate. Under this program, the Debtor was required to pay $77.00 per month on her student-loan obligation. The Debtor, however, citing to what she felt was fraud on the part of the Cleveland Institute of Technology, declined to participate in this program. (Ex. No. 9).

## DISCUSSION

This cause comes before the Court on the Debtor's Complaint to Determine the Dischargeability of Debt. Determinations concerning the dischargeability of particular debts are deemed to be "core proceedings." 28 U.S.C. § 157(b)(2)(I). And as a "core proceeding," Congress has conferred upon this Court jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

In a bankruptcy case, debts incurred by a debtor to finance an education are generally excepted from discharge. 11 U.S.C. § 523(a)(8). Yet, unlike with many other types of nondischargeable debts, which are absolutely excepted from discharge, student-loan obligations may be discharged in bankruptcy in the limited situation where a debtor is able to make an affirmative showing that repaying the loan would impose an "undue hardship." As set forth in § 523(a)(8):

Page 3

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
> >
> > > (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> > >
> > > > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> > >
> > > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

As used in § 523(a)(8), the term "undue hardship" is not defined. At a minimum, however, it is established that "undue hardship" denotes a heightened standard, requiring a showing beyond the garden-variety financial hardship experienced by most debtors who seek bankruptcy relief. *In re Frushour*, 433 F.3d 393, 400 (4th Cir. 2005).

> For the heightened standard of "undue hardship," the Sixth Circuit Court of Appeals held, in the case of *Oyler v. Educational Management Credit Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005), that a court should apply what is known as the Brunner test, named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.* 831 F.2d 395 (2nd Cir. 1987). Under this test, a debtor must show the existence of each of the following three elements to have a student loan discharged on the basis of "undue hardship":
>
> > (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

Page 4

> (2) The additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans;
>
> (3) That the debtor has made good faith efforts to repay the loans.

*Id.* at 399-400. In its assessment as to the applicability of these elements, the DOE, based upon the Debtor's current household budget, which showed a monthly shortfall, did not actively contest the applicability of the first and second elements. Rather, the DOE took particular issue with the third element of the Brunner Test, arguing that having offered the Debtor a minimal payment of only $77.00 per month through Income Contingent Repayment Program (ICRP), the Debtor's failure to participate in the program constitutes a lack of good faith. (Doc. No. 39, at pg. 3).

As an overall point, the position taken by the DOE carries strong weight. This Court has observed that, "[w]hile participation in the repayment program is not an absolute prerequisite, its equitable manner of handling student-loan obligations means that a debtor who fails to pursue payment options under the program bears a heavy burden to show that they have acted in good faith as applied to the third prong of the Brunner Test." *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 780 (Bankr. N.D.Ohio 2007). Yet, contrary to this precept, the Debtor, when offered entry into the ICRP in 1995, declined to participate and thereafter made no serious attempt to investigate the merits of the program. This concern, over the Debtor's failure to seriously consider the merits of the ICRP, continues to hold true today.

There is no reason to suspect that the Debtor presently lacks the means by which to participate in the ICRP. The Debtor candidly admitted at the Trial held in this matter that, despite her written budget which showed to the contrary, she could afford to pay at least $50.00 per month, and possibly more, toward her student-loan obligation. For this purpose, it can be assumed that the Debtor's obligation under the ICRP at the present time would not significantly exceed, and could even be less, than the $77.00 set in 1995. In this regard, the Debtor's financial situation at the present

Page 5

Donna Gregory v. U.S. Department of Education
Case No. 07-3018

time would appear to be slightly more strained – potentially lowering her burden under the ICRP which looks to one's ability to pay – as compared to 1995. For example, although the Debtor now has a spouse who contributes to the household income, this benefit is offset by the fact that, since 1995, the Debtor had a child and lost a higher paying job with the state government.

Still, the Sixth Circuit Court of Appeals has squarely rejected any per se approach whereby a debtor's failure to participate in the ICRP absolutely bars a finding of good faith under the third prong of the Brunner Test. *Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 680, 682 (6th Cir. 2005). As recently explained:

> Congress recently enacted the most sweeping reform of bankruptcy law since the enactment of the Bankruptcy Code in 1978. Yet Congress left § 523(a)(8)'s "undue hardship" language intact. Had Congress intended participation in the ICRP – implemented in 1994 – to effectively repeal discharge under § 523(a)(8), it could have done so.

*Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 364 (6th Cir. 2007) (internal citations and quotations omitted). A debtor's decision regarding the ICRP, therefore, cannot be considered in isolation, but must be viewed within the context of other evidence pertaining to a debtor's good faith or lack thereof.

Looked at in this broader light, a couple of factors do exhibit shades of good faith on the part of the Debtor. First, while the exact number and amount are not known, the evidence shows that the Debtor made at least a few voluntary remunerations to the DOE on her student-loan obligation. The Debtor also consolidated her obligation with the DOE. On whole, therefore, it cannot be said that, as occurs in many situations where good faith is found to be lacking, the Debtor completely shirked her responsibilities with respect to her educational debt. *See England v. United States of America (In re England)*, 264 B.R. 38, 50 (Bankr. D.Idaho 2001) ("a debtor's efforts to deal with unpaid students loans is critical to showing good faith.").

Page 6

**Donna Gregory v. U.S. Department of Education**
**Case No. 07-3018**

At the same time, the concept of good faith – which envisions, where possible, compliance with one's duties[1] – cannot be said to prominently spring forth in this type of situation where, over the course of 20 years, the Debtor made only a few minor payments on her educational debt. *See Pelliccia v. U.S. Department of Education*, 67 Fed. Appx. 88, 89 (3rd Cir. 2003) (good faith looks over entire time period, between date on which first loan payment became due and date on which debtor files for bankruptcy). Especially troubling in this respect is this existence of this unanswered question: when the Debtor had a higher paying job in state government, why was not a greater effort made on her part to repay the student loan? This fact becomes especially acute given that the Debtor ascribed much of her inability to pay her student-loan obligation to the loss of her government job.

Consequently, while there exist minor indicia of good faith by the Debtor, the Court is still left with these two salient facts: Over the course of 20 years, the Debtor made only a small number of voluntary payments on her student-loan. And, the Debtor neither participated in, nor made a serious effort to investigate the merits of the ICRP. *See Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d at 364-65 (good faith found where debtor "looked into the ICRP, but declined to enroll in the program because the tax consequences would be too burdensome[.]"). Also of importance on the matter of good faith, it cannot be overlooked that the Debtor's situation lacks those traits normally associated with a finding of "undue hardship." Most noticeable, neither the Debtor nor any immediate family member is under disability; in addition, the Debtor and her spouse both hold full time jobs. *See e.g., Storey v. Nat'l Enter. Sys. (In re Storey)*, 312 B.R. 867, 872-73 (Bankr. N.D.Ohio 2004) (permanent disability which directly affects a debtor's ability to hold a job, is the common paradigm in a § 523(a)(8) "undue hardship" case).

On balance, therefore, the weight of evidence in this matter does not warrant a finding that the Debtor, as applied to the Brunner Test, made a good faith effort to repay her student-loan debt.

---

[1] BLACK'S LAW DICTIONARY 693 (6th ed. 1990).

Page 7

Donna Gregory v. U.S. Department of Education
Case No. 07-3018

Consequently, as it is the Debtor's burden to establish each and every element of the Brunner test, the Court cannot find that the "undue hardship" standard for discharging student loans under § 523(a)(8) exists in this particular case. *O'Hearn v. Educ. Credit Mgmt. Corp.*, 339 F.3d 559, 565 (7th Cir. 2003).

Notwithstanding, the Debtor maintains that she should not have to pay her student-loan obligation because she did not receive the benefit of her bargain, having incurred her student loan to attend a school, the Cleveland Institute of Technology, which suddenly closed before she was able to complete her course of study. This, according to the Debtor, constitutes fraud on the part of the school, "and as such, there is no legal or equitable basis to hold her responsible for repayment of the student loan." (Doc. No. 38, at pg. 2). As support for her position, the Debtor cites to the case of *In re Goldberg*, 297 B.R. 465 (Bankr. W.D.N.C. 2003).

In *In re Goldberg*, the court disallowed a proof of claim filed by the holder of the debtor's student-loan obligation. The court based its decision on a lack of consideration for the loan due to the fact that, (1) the debtor never received any student-loan check in connection with her loan application, and (2) where, due to the closure of the school just one week after she enrolled, the debtor never received any benefit in connection with the loan. For its holding, the court rejected the creditor's argument that it lacked jurisdiction, because the debtor had failed to exhaust her administrative remedies, finding that such a defense had no applicability with respect to the adjudication of a proof of claim.

Yet, even assuming that the Court agrees with the decision of *In re Goldberg*, its holding does compel the result sought by the Debtor. The claim's allowance process, at issue in *In re Goldberg*, is separate from and distinct from matters concerning dischargeability. To just scratch the surface, the claims allowance process deals exclusively with the rights of a creditor against assets of a debtor's bankruptcy estate. By contrast, a dischargeability determination concerns whether a

Page 8

creditor may, after the entry of bankruptcy discharge, continue to pursue the enforcement of its debt as a personal liability against the debtor. *Drivas v. Intuition, Inc. (In re Drivas)*, 266 B.R. 515, 520-21 (Bankr. M.D.Fla. 2001). Also, from a factual standpoint, *In re Goldberg* is distinguishable from this case. In *In re Goldberg*, the debtor never received the student-loan proceeds; in this matter, however, there is no disagreement that the Debtor received the proceeds, totaling $4,000.00, for her student-loan.

Even this aside, there exists a more fundamental deficiency with the Debtor's position: Relief on the basis of fraud, as asserted by the Debtor, can be had only against those who are shown to have been parties thereto; it cannot be obtained against a stranger to the fraud. *Klein v. Equitable Life Assurance Soc.*, 17 Ohio App.3d 50, 53, 477 N.E.2d 1190, 1193 (Ohio App. 1st Dist. 1984). The fraud as alleged by the Debtor, however, was perpetrated by the Cleveland Institute of Technology, not the DOE or any previous assignor.

The same also applies contractually. The contractual duty of the DOE was simply to provide financing for the Debtor's education, which it did. No privity existed between the DOE and the Cleveland Institute of Technology insofar as it concerned the Debtor. Hence, in the absence of an agreement to the contrary, no liability can be ascribed to the DOE for the failure of the Cleveland Institute of Technology to fulfill its obligation to the Debtor. The Debtor's grievance is instead against the Cleveland Institute of Technology.

Consequently, whether for purposes of contract or tort, the DOE, like the Debtor, was innocent of any wrongful act, misfeasance or otherwise, committed by the Cleveland Institute of Technology. And under this type of condition, it is the norm for the law to allocate the risk of loss on the party who is in the best position to prevent the loss, this being the Debtor who directly contracted with Cleveland Institute of Technology. *See Cucchi v. Rollins Protective Servs. Co.*, 524 Pa. 514, 534, 574 A.2d 565, 576 (1990) (Nix, J., concurring) (noting that the objective of tort law

Page 9

Donna Gregory v. U.S. Department of Education
Case No. 07-3018

"is to modify a course of behavior through the allocation of financial risk upon the party in the best position to prevent the harm.").

This does not mean, however, that the Debtor is completely without recourse. As an administrative matter, it is provided in 34 C.F.R. 682.402(d), that an individual may be relieved of a student-loan obligation if the student, "did not complete the educational program at that school because the school closed while the student was enrolled or on an approved leave of absence . . . or the student withdrew from the school not more than 90 days before the school closed." At the same time, a student's compliance with this regulation, and thus entitlement to an administrative discharge of their educational loan, does not equate with the student's right to receive a discharge of their loan in bankruptcy.

The basis for discharge set forth 34 C.F.R. 682.402(d) is administrative matter, handled by the U.S. Department of Education, and is completely separate from and distinct from a discharge of an educational debt in bankruptcy based upon the "undue hardship" standard of § 523(a)(8). *See* 34 C.F.R. 682.402(f) (providing that bankruptcy is a separate ground to discharge a student-loan debt). Accordingly, a student could be entitled to receive a discharge of their educational loan under 34 C.F.R. 682.402(d), but not 523(a)(8), and vice-versa. In this regard, the Sixth Circuit stressed: "the requirement of undue hardship must always apply to the discharge of student loans in bankruptcy." *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 623 (6th Cir. 2004).

All this is not to say that the untimely closure of a debtor's educational institution cannot be considered by a court in an "undue hardship" analysis under § 523(a)(8). *In re Law*, 159 B.R. 287 (Bankr. D.S.D. 1993). The requirement of good faith, as set forth in the Brunner Test, is sufficiently malleable to cover a wide array of conditions. However, the premature closure of a debtor's school is but one factor for a court to consider, and in this matter, cannot stand against those concerns already mentioned, particularly the Debtor's lack of serious effort to repay her student loan.

Page 10

In sum, given the lack of any real effort by the Debtor to repay her student loans, and considering that the Debtor has a potential administrative remedy available, the Court is not persuaded that the closure of the Debtor's school warrants a finding that the Debtor is entitled to an "undue hardship" discharge of her student-loan obligation to the DOE. Considering, therefore, that the Debtor has not otherwise established that, as required under the Brunner Test, she made a good faith effort to repay her loan to the DOE, the Court declines to grant the Debtor an "undue hardship" discharge of her student-loan obligation. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 523(a)(8), those educational obligations held by the Defendant, the United States Department of Education, against the Plaintiff/Debtor, Donna Gregory, be, and are hereby, determined to be NONDISCHARGEABLE DEBTS.

**IT IS FURTHER ORDERED** that this adversary proceeding, be, and is hereby, DISMISSED.

Dated: April 1, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

# **_CERTIFICATE OF SERVICE_**

Copies were mailed this 1st day of April, 2008, to the following parties:

Donna R. Gregory
417 E Pearl St
Toledo, OH 43608

Edward Lee Schimmel
4303 Woodville Rd
Northwood, OH 43619

U.S. Department of Education
400 Maryland Ave, SW
#6E353
Washington, DC 20202

William J. Edwards
Four Seagate, #308
Toledo, OH 43604-2624

Douglas A Dymarkowski
4747 Holland-Sylvania Rd
Sylvania, OH 43560

Office of the U.S. Trustee
201 Superior Ave, E
#441
Cleveland, OH 44114

/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court